REX B. JEPPSEN and JEAN M. JEPPSEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jeppsen v. Commissioner
Docket No. 5435-77.
United States Tax Court
T.C. Memo 1978-343; 1978 Tax Ct. Memo LEXIS 172; 37 T.C.M. (CCH) 1428; T.C.M. (RIA) 78343; August 30, 1978, Filed Rex B. Jeppsen, pro se. James D. Vandever, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency of $ 1,326 in petitioners' Federal income taxes for the 1975 taxable year. The two issues for decision in this case are (1) whether petitioners *173 are entitled to a deduction for living expenses away from home either under sec. 162 [1] or sec. 212 and (2) whether petitioners are entitled to a charitable deduction. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Petitioners Rex B. Jeppsen and Jean M. Jeppsen, husband and wife, were legal residents of Long Beach, California, at the time their petition was filed. They filed a timely Federal income tax return for the 1975 taxable year. Rex B. Jeppsen will hereinafter be referred to as the petitioner. Beginning in 1941, petitioner was employed with the federal civil service. In 1959, petitioner was transferred to the Federal Aviation Administration (FAA). Petitioner worked for the FAA in various California cities until December of 1965. At the initiation of the FAA in December of 1965, petitioner was removed from active service pending a determination by the Civil Service Commission concerning whether he was suffering from a psychiatric disability. Petitioner was *174 then placed on indefinite medical leave. After leaving the FAA in 1965, petitioner worked for short periods of time at General Motors and Pacific Ordinance, both located in the Los Angeles area. In April of 1967, petitioner moved to Utah where he opened a Yamaha motorcycle sales franchise. Petitioner operated the franchise with his brothers George and Gary until May of 1968, when petitioner was advised by Yamaha that his franchise would be terminated within 30 days. The headquarters for Yamaha is in the Los Angeles area.Petitioner opposed and continues to oppose the termination of his Yamaha franchise. Petitioners have never taken legal action against Yamaha for the cancellation. In 1968, petitioner returned to California. Since November of 1968, he has worked for various employers in southern California. From 1970 until the present, he has worked primarily for Douglas Aircraft. All income received by petitioner in the taxable year 1975 came from employers in California with the exception of petitioner's Civil Service Retirement Annuity and interest income. Petitioner was born in Utah. He has a father, six brothers and a sister living in Utah. He owns 96 acres of land *175 there. On another 1/3 acre of land owned by petitioner in Utah are an occupied housetrailer and a garage. He spends approximately $ 500 a year on his Utah land for taxes and upkeep. Petitioner has a Utah driver's license. He has one car registered in Utah and one car registered in California. Petitioner is registered to vote in Utah and last voted in Utah in July of 1976 by absentee ballot. In the years 1972 through 1975, petitioners made the following trips to Utah: Number of Year
Trips
1972
3
1973
2
1974
2
1975
6
1976
5
In the 1975 taxable year, petitioners deducted $ 12,740 as an employee business expense for meals and lodging incurred while away from home. This entire amount, representing petitioners' living expenses while living in the Los Angeles area, is disputed. Also, in the 1975 taxable year, petitioners deducted $ 2,000 as contributions to the Mormon Church. Of this amount, $ 1,996 is disputed. OPINION Except for the period from April of 1967 until May of 1968, when petitioner lived in Utah and operated a Yamaha franchise, petitioner has lived and worked in California for the last 19 years. At the time of trial, he had lived *176 in the Los Angeles area continuously for the last 10 years. Since November of 1968, petitioner has worked primarily for employers in southern California. All income received by petitioner in the taxable year in issue came from California employers, except for petitioner's Civil Service Retirement Annuity and interest income. Petitioner contends he is entitled to a deduction for meals and lodging as travel expenses incurred while away from home on business. Sec. 162(a) (2) allows a deduction for "traveling expenses * * * while away from home in the pursuit of a trade or business." Petitioner contends that during 1975 Utah was his home and that the meal and lodging expenses he seeks to deduct were incurred while away from that home. He claims his disputes with the FAA and Yamaha required his presence in the Los Angeles area. The record establishes that petitioner lived and worked in southern California continuously for the past ten years. For the past eight years he has worked primarily for one employer. All of his income for the tax year in question came from employers in California, except for interest income and a retirement annuity from the Civil Service. Within the *177 meaning of sec. 162(a) (2), petitioner's tax home was in the vicinity of his place of employment in the Los Angeles area. . Nor will petitioner find relief under sec. 212. Sec. 212 refers to activities falling short of being a trade or business. It does not enlarge the range of deductions allowed by sec. 162(a) (2). We note that petitioner has twice unsuccessfully litigated this issue. Jeppsen v. Commissioner, T.C.M. 1976-322; Jeppsen v. Commissioner, T.C.M. 1977-274. The other issue, also unsuccessfully argued by petitioner in Jeppsen v. Commissioner, T.C.M. 1977-274, involves petitioner's claim that he made a charitable contribution to the Mormon Church in the form of forgiveness of interest on a debt allegedly owed him by the Church. By forgiving interest on the alleged debt, petitioner claims he made a charitable contribution to the Church. Sec. 170 allows a deduction for contributions of gifts to or for the use of certain institutions including churches. Petitioner failed to show the Mormon Church owed him money. He failed to show any interest *178 was due on the debt or that he forgave the interest. Moreover, if petitioner had shown these facts, his deduction fails because the alleged contribution is a gift of a right to receive income which would have been income to petitioner. Cf. ; ; . Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩